THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* IWAN CHMILENKO, Defendant-Appellant.

First District (2nd Division) No. 62646

Opinion filed December 28, 1976.

Epstein and Kesselman, of Chicago (Mark B. Epstein, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and Edward H. Phillips, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Iwan Chmilenko, defendant, was charged with the offense of unlawful use of weapons. (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(4).) After a bench trial he was found guilty and sentenced to one year conditional discharge. Defendant contends that he was not proved guilty beyond a reasonable doubt.

Police Officer Ronald Sacolick testified that on May 22, 1975, he was riding north on California Avenue in Chicago. As he neared 1045 North California Avenue, he observed defendant shaking his finger at an unidentified individual. He saw the defendant lift his shirt to about mid-chest level and point to something under his shirt. Defendant lowered his shirt and resumed shaking his finger at the other individual. Sacolick announced his office and made a protective search of defendant. He found a gun tucked in defendant's pants beneath his shirt. Sacolick said that as he approached defendant he could not see the weapon.

Vera Chmilenko, defendant's wife, testified through an interpreter. She said she lived at 1045 North California Avenue in Chicago. On May 20, 1975, she saw a man on top of the garage, pushing on the porch door. She screamed for her husband. After the man jumped down off the roof, he pointed a gun at her. She further testified that on May 22, 1975, between 4 and 5 p.m., she was on an enclosed porch when she saw the same man come out of the garage. Her husband came into the house and got a gun. He ran to the front of the house and grabbed the man. At this time her husband was on the front steps of the house and the man was on the sidewalk. The police arrived and took the gun from her husband.

Defendant testified that on May 20, 1975, two days before the incident, he saw a boy in his yard. He asked him what he was doing there, but the boy ran away. Defendant further testified that at about 4 or 5 p.m. on May 22, 1975, he heard his wife scream that somebody was trying to kill her. He went upstairs and got his gun, looked through the window, and saw someone who was holding a gun in his hand. Defendant went to the front of his house and caught the man on the steps of his property. This man was the same one his wife had seen two days earlier. Defendant said he was on the steps and the man was on the sidewalk. He denied that he went into the street in pursuit of the man.

Hosea Sanchez, defendant's tenant, testified that he saw defendant standing on the steps of his residence. He was holding a young man and talking to him when the police arrived and arrested defendant.

Ronald Sacolick was called as a rebuttal witness. He stated that when he arrived at 1045 North California, defendant and the other individual

were standing about 10 feet away from the doorway. Sacolick said that California Avenue is a northerly street; that defendant and the man were approximately 10 feet north of the doorway; and that he was measuring the 10 feet parallel to the street itself.

I.

Section 24—1(a)(4) of the Criminal Code provides:

"(a) A person commits the offense of unlawful use of weapons when he knowingly:

\* \* \*

(4) Carries concealed in any vehicle or concealed on or about his person *except when on his land or in his own abode or fixed place of business* any pistol, revolver or other firearm." (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(4).)

Our initial inquiry is directed to whether the State must negate the "exceptions" set forth in the aforesaid italicized statutory language as part of its burden of proof or whether this language creates "exemptions" from prosecution which require the defendant to bear the burden of proof in regard thereto (Ill. Rev. Stat. 1973, ch. 38, par. 24—2(g)).

■■ The primary rule of construction is that the intention of the legislature be ascertained and given effect. (*People v. Scott* (1974), 57 Ill. 2d 353, 312 N.E.2d 596.) In so doing, it has long been held that the court must look to the plain and ordinary meaning of the language used by the legislature. (*People v. Dednam* (1973), 55 Ill. 2d 565, 304 N.E.2d 627.) The wording of section 24—1(a)(4) is clear and unambiguous. That section "excepts" from its provisions any person who carries a concealed weapon when on his land, place of abode, or fixed place of business. Had the legislature intended to classify the italicized language of section 24—1(a)(4) as an exemption, it would have been a simple matter to effectuate.

Moreover, in *People v. Alexander* (1st Dist. 1973), 13 Ill. App. 3d 635, 301 N.E.2d 69 (abstract), this court considered the effect of the phrase, "not his wife," in section 11—1 of the Criminal Code which defines the offense of rape (Ill. Rev. Stat. 1971, ch. 38, par. 11—1). We concluded that the statute required the State to negate the allegation that the complaining witness was not the wife of the accused. This reasoning applies to the construction of the exceptions contained in section 24—1(a)(4), which defines the offense of unlawful use of weapons. We hold that the exceptions contained in section 24—1(a)(4) are a part of the substantive definition of the offense. As such, the State must, by proof beyond a reasonable doubt, negate these statutory exceptions.

We are aware that the term "abode" in section 24—1(a)(4) was interpreted in *People v. Taylor* (1st Dist. 1975), 28 Ill. App. 3d 186, 328 N.E.2d 325. There the court characterized that term as creating a

statutory *exemption* to the offense of unlawful use of weapons. (See also *People v. McClure* (1st Dist. 1976), 43 Ill. App. 3d 1059, 358 N.E.2d 23.) However, reference to the "exemptions" contained in section 24—1(a)(4) in *Taylor* was *dicta* and the court therein did not specifically address itself to the precise issue here at question.

## II.

The record discloses that at the time of the alleged offense, defendant lived in Apartment 2, at 1045 North California. The testimony of the defense witnesses, which included one of defendant's tenants, indicated that defendant was on the steps at this address, while the unidentified man was standing on the sidewalk. Defendant testified he never went into the street to chase the man. The conclusion that defendant owned the property is further supported when the trial court, in rendering its finding, noted the State proved defendant was off his own land. To contradict this testimony, the State introduced the rebuttal testimony of Officer Sacolick to the effect that defendant was 10 feet from the doorway and this was parallel to the street itself.

■■ Ordinarily, questions pertaining to the credibility of witnesses are left to the trier of fact and a reviewing court will not reverse this finding. The law is clear, however, that this court must reverse a conviction based upon evidence which does not meet the standard of proof beyond a reasonable doubt. (*People v. Williams* (1st Dist. 1975), 34 Ill. App. 3d 136, 339 N.E.2d 314, *aff'd* (1976), 65 Ill. 2d 258, 357 N.E.2d 525.) Here, the State's evidence did not prove that defendant was not on his land. Rather, the testimony of Officer Sacolick only showed defendant was not in the doorway of his residence. The record is vague and does not show whether this position still enabled defendant to remain on his own land or whether he was on another's property. The State had the opportunity to introduce unambiguous evidence to fulfill its burden of proof in relation to the unlawful use of a weapon under section 24—1(a)(4) and to refute defendant's version of the incident; yet such evidence was not proffered.

Accordingly, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

STAMOS, P. J., and JIGANTI, J., concur.